*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re GROCE/STARK, Minors.

UNPUBLISHED
September 12, 2019

No. 347444
St. Clair Circuit Court
Family Division
LC No. 18-000033-NA

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Respondent mother appeals as of right the order terminating her parental rights to her children, EG, MG, GG, RG,[1] and CS, pursuant to MCL 712A.19b(3)(c)(*i*) (more than 182 days have passed since original disposition, the conditions that led to the adjudication continue to exist, and parent unable to rectify conditions), (c)(*ii*) (more than 182 days have passed since original disposition, other conditions exist, and parent unable to rectify conditions), (g) (parent, although financially able to do so, failed to provide proper care and custody and no reasonable expectation parent will be able to provide proper care and custody within a reasonable time),[2] and (j) (reasonable likelihood child will be harmed if returned to parent). We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Respondent mother is the mother of five children. Four of her children, EG, MG, GG, and RG, live with their father who has full custody of the children. The youngest of her children, CS, was removed immediately after his birth in 2018 because of respondent mother's substance

---

[1] EG, MG, GG, and RG are referred to collectively as the "Groce children."

[2] After the original petition was filed, MCL 712A.19b(g) was amended by 2018 PA 58, effective June 12, 2018, to include the financial component. When the supplemental petition was filed on November 14, 2018, it reflected the updated version of this statutory provision.

abuse issues, and he was placed in the care of a paternal aunt. Respondent mother overdosed three times while pregnant with CS, and CS was born drug addicted.

Respondent mother was on parole during the course of this case and was twice incarcerated for violating conditions of her parole. One of the conditions of her parole was a no-contact order between her and the father of CS, JS.[3] Respondent mother was incarcerated approximately six months into the case and then stopped making any progress toward the completion of her parent-agency treatment plan. Respondent mother also admitted to using drugs, specifically heroin and methamphetamine, on four occasions since the beginning of the case. Because of respondent mother's continued substance abuse and lack of progress, a supplemental petition to terminate her parental rights was filed.

The trial court found statutory grounds to terminate respondent mother's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), based primarily on respondent mother's drug abuse, domestic violence issues with JS, and the emotional harm caused to the Groce children by respondent mother's intermittent involvement in their lives. The court also found that termination was in the best interests of the children. This appeal followed.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent mother argues that the trial court clearly erred when it found that petitioner established statutory grounds for termination by clear and convincing evidence. We disagree.

This Court reviews the lower court's findings for clear error. MCR 3.977(K). "The clear error standard controls our review of both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and citation omitted). A finding is clearly erroneous if, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *Id*. Regard must "be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

The trial court determined that petitioner established the statutory grounds found in MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j) by clear and convincing evidence. "In order to comply with the guarantees of substantive due process, the state must prove parental unfitness by 'at least clear and convincing evidence' before terminating a respondent's parental rights." *In re B & J*, 279 Mich App 12, 23; 756 NW2d 234 (2008). "[T]he liberty interest of the parent no longer includes the right to custody and control of the children" after the court determines that at least one statutory ground for termination was established by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000), superseded in part by statute as stated in *In re Moss*, 301 Mich App 76, 83, 88; 836 NW2d 182 (2013).

---

[3] JS consented to the termination of his parental rights to CS and is not a party to this appeal.

MCL 712A.19b(3)(c)(*i*) provides:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> > (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Respondent mother's substance abuse was the primary reason for adjudication in this case, and more than 182 days elapsed since the entry of the initial dispositional order. CS was born drug addicted and experienced withdrawal symptoms. Despite rehabilitation programs and a period of incarceration, respondent mother continued to use drugs. Respondent mother admitted to using drugs on four occasions during the case, including heroin approximately two months before the evidentiary hearing. Since being paroled in December 2016, respondent mother had participated in five rehabilitation programs, failing to complete the programs or relapsing soon after completion. On the basis of respondent mother's long history of substance abuse and relapse, the court determined that there was no reasonable expectation that the issue of substance abuse would be rectified within a reasonable time considering the ages of the children. On the basis of the evidence presented, this conclusion was not clearly erroneous.

MCL 712A.19b(3)(c)(*ii*) provides:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> > * * *

> > (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The trial court determined that respondent mother's issues with domestic abuse constituted "other conditions." More than 182 days had passed since the entry of the initial dispositional order. The court found that respondent mother had the opportunity to rectify this condition by abiding by the terms of the no-contact order and using support mechanisms offered by petitioner. Instead of working toward rectifying this condition, respondent mother continued to have contact with JS and even admitted during her testimony that she relied on JS for support. Based on respondent mother's behavior, the court determined that there was no reasonable expectation that the condition would be rectified within a reasonable time considering the children's ages. This conclusion was not clearly erroneous and was supported by the evidence.

MCL 712A.19b(3)(g) provides, "The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). The trial court found that respondent mother was unable to provide proper care and custody for the children because she lacked appropriate housing and the means to support them. Respondent mother had no income and only hoped to receive Social Security. The court further determined that respondent mother would not be able to provide proper care and custody within a reasonable time because she "[kept] getting reincarcerated for violations of her parole." Respondent mother had in fact been incarcerated twice during the pendency of this case for parole violations. These findings were supported by the evidence and were not clearly erroneous.

Respondent mother also failed to comply with her service plan. Respondent mother participated in her plan for approximately six months before she was incarcerated the first time for violating her parole. During her period of incarceration, respondent mother had no contact with either her children or her worker. She also failed to complete substance abuse and psychological evaluations. Respondent mother did not resume participation in her service plan after her release from incarceration. Instead, she contacted her worker only once during that period and seemingly had no contact with her children. Respondent mother did not resume drug testing after being released from incarceration, and she tested positive for drugs on multiple occasions. Thus, the evidence supported the trial court's determination that petitioner established MCL 712A.19b(3)(g).

MCL 712A.19b(3)(j) provides, "There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Harm includes physical as well as emotional harm or abuse. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). Respondent mother had not seen the Groce children for "a few months" before the onset of this case. Once the case began, respondent mother saw the children once per week until she was incarcerated for a parole violation at which point respondent mother did not see the children for approximately six months. The Groce children experienced "a lot of anger issues and mixed emotions about their mother being incarcerated, especially the older two children." The children seemed to struggle emotionally with the fact that their mother came in and out of their lives. Accordingly, respondent mother's inconsistent contact with the Groce children caused them emotional harm.

CS was born drug addicted and experienced withdrawal symptoms. Respondent mother continued to use drugs after his birth. At one visitation, she appeared to struggle to stay awake and also tested positive for heroin. This demonstrates that respondent mother may have been attempting to care for CS while under the influence of drugs thereby putting him at risk of harm. Accordingly, the trial court did not clearly err when it determined that petitioner established MCL 712A.19b(3)(j). Therefore, the trial court did not clearly err when it determined that petitioner established statutory grounds by clear and convincing evidence.

III. BEST INTERESTS

Respondent mother also argues that the trial court erred when it found that termination of her parental rights was in the best interests of the Groce children. We disagree.

As previously stated, this Court reviews the lower court's findings for clear error. MCR 3.977(K). "The clear error standard controls our review of both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Williams*, 286 Mich App at 271 (quotation marks and citation omitted). The lower court must determine whether termination of parental rights is in a child's best interest using the preponderance of the evidence standard. *In re Moss*, 301 Mich App at 90.

MCL 712A.19b(5) states that "[i]f the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests," the court must terminate the parent's rights. "The trial court should weigh all the evidence available to determine the [child's] best interest[]." *In re White*, 303 Mich App at 713. The focus must be on the child, rather than the parent. *In re Moss*, 301 Mich App at 87. In making the best interest determination, "the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

The trial court found that termination of respondent mother's parental rights was in the best interests of the Groce children even though the children enjoyed permanency and stability with their father. None of the Groce children objected to the possibility of the termination of respondent mother's rights. When the caseworker talked to the Groce children about termination she discovered that they were all fine with it. EG told the caseworker, "That's fine, she doesn't see us anyway." GG said, "She's not my mother anymore anyway," and "I don't like her." MG said, "I don't know whether I should be happy or sad about this but I'm okay." RG, who was reluctant to talk about respondent mother, said, "That's fine," when asked about termination. The children's sentiments, combined with the fact that respondent mother had not seen the children for several months before the case began and did not see the children while incarcerated for several months, support the trial court's finding that the bond between the children and respondent mother was "diminished." Furthermore, the caseworker opined that the children would have "behavioral issues and lots of anger" if visits resumed with respondent mother.

Additionally, the termination of respondent mother's rights opened up the possibility of adoption for the Groce children. The children's stepmother indicated that she was interested in adoption. And at least two of the children, EG and MG, asked their stepmother to adopt them.

Therefore, the trial court did not clearly err when it found that termination of respondent mother's parental rights was in the best interest of the Groce children.[4]

Affirmed.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto

---

[4] On appeal, respondent mother notes that the caseworker testified that, during visits, she had "a lot of difficulty balancing attention between all five children." But this testimony was contrary to her written report that indicated she was able to attend to each child during the visits. Irrespective of this disparity, the Groce children were removed in 2012 because of respondent mother's issues, and she was unable to address her issues despite a second attempt to provide services in 2018. She relapsed on drugs and cancelled a one-hour visit with her children when faced with a stressful situation. Successful one-hour visitation did not reflect an ability to provide proper care and custody for the children on a daily basis.